Guy DUNBAR, Petitioner,

v.

Jim H. ROSE, etc., Respondent.

No. CIV–2–75–74.

United States District Court,
E. D. Tennessee,
Northeastern Division.

July 28, 1975.

Guy Dunbar, pro se.

Tom P. Jennings, Asst. Atty. Gen., Nashville, Tenn., for respondent.

## MEMORANDUM OPINION AND CERTIFICATE

NEESE, District Judge.

The Court considered the application of the petitioner Mr. Guy Dunbar for the federal writ of habeas corpus herein a challenge to the finding of a state hearing judge that he possessed the mental capacity to enter a plea of guilty to the indictment in the Criminal Court of Hamblen County, Tennessee, pursuant to the judgment of which he is now incarcerated by the respondent. See memorandum opinion and order herein of June 10, 1975. The sole issue before this Court, therefore, is whether the determination of such factual issue in *Guy Dunbar v. James H. Rose, Etc., Et Al.*, civil action no. 4851 in the Criminal Court for Hamblen County, Tennessee, affirmed *sub nom. Guy Dunbar, plaintiff in error, v. James H. Rose, Warden, et al.*, defendants in error, no. 57 in the Court of Criminal Appeals of Tennessee, judgment of September 11, 1974, certiorari denied by Tennessee Supreme Court in a per curiam of January 20, 1975, is supported fairly as a whole by such record. 28 U.S.C. § 2254(d)(8).

The applicant pleaded initially not guilty to such indictment in *The State v. Guy Dunbar*, case no. 2401 in the Crimi-

nal Court of Hamblen County, Tennessee, charging him with the murder in the first degree of his wife in the dining room and kitchen of the Brumley Hotel, Greeneville, Tennessee[1] on November 10, 1970. After some six eyewitnesses to such crime had testified for the prosecution, the applicant waived further trial by jury and changed his plea to guilty. The trial judge certified that the applicant pleaded guilty to the indictment after a full explanation in open court of his rights. The aforementioned judgment of conviction was thereupon entered, and the applicant was incarcerated.

Earlier, the applicant had been found mentally incompetent to stand trial on the bases of opinions of psychiatrists and confined in a state mental institution. Thereafter, the same psychiatrists came to the conclusion that the applicant had recovered and advised the Court that Mr. Dunbar was at that time mentally competent. His trial and plea-change ensued.

At the post-conviction hearing in the state court, the applicant testified that he had no recollection of killing his wife; that he remembered being in the mental institution but not going there; that, during the period before, during and after his criminal trial, his memory and reasoning capability " * * * came and went * * * "; and that, he changed his plea from not guilty to guilty, because he was frightened when someone told him " * * * if they turn me loose they would put me in 'a nut house' for the rest of my life * * * ".

Mr. Dunbar offered also the testimony of two lay witnesses who expressed opinions and their inferences based upon their perceptions. See and cf. Rule 701, Federal Rules of Evidence. One of these witnesses, Mr. Charles Long, a Hamblen County sheriff's detective, gained the perception that Mr. Dunbar was confused and disturbed before his criminal trial, pointing out that the applicant, al-

though able to communicate, spoke very little on the automobile trip from the mental institution to the Hamblen County jail. He described the difference in Mr. Dunbar, as between the time of his criminal trial and his post-conviction hearing, as " * * * as much difference as a drunk man and a sober man. * * * " Mr. P. P. Neblett, a deputy sheriff of such county, stated his perceptions of Mr. Dunbar during the criminal trial period in these words: " * * * It was—looked like—very difficult to get through to him, couldn't get much out of him. He seemed to me like he was in a daze, didn't understand what was going on; and he didn't talk much, didn't give very intelligent answers. It was hard to communicate, looked to me like. * * * "

Against these perceptions were those of J. Randall Shelton, Esq., one of the appointed attorneys who represented Mr. Dunbar on his criminal trial. He testified, *inter alia*: " * * * I feel certain that Mr. Dunbar understood and appreciated, was aware of everything that was happening there in regard to changing his plea. * * * Of course, all we can have to go on is his word at that time, and we asked him if he understood what this meant and the consequences of it, and he said that he did. Of course, I don't know what went on in his mind, but I think he understood the evidence was overwhelming at that point. * * * [W]e had no evidence to support a temporary insanity defense [to the indictment] other than Mr. Dunbar's testimony. We had no medical evidence to show this. * * * "

No evidence was offered at the hearing in the form of testimony of any examining psychiatrist or other expert in the field of mental capacity. In a Tennessee post-conviction proceeding, the burden is on the petitioner to prove his allegations attacking the validity of his conviction. *Miller v. State*, Tex.Cr.App. (1973), 508 S.W.2d 804, 807[8], certiorari denied (1974). In an evidentiary hearing

1. By agreement, the venue of such trial was changed from Greene County, Tennessee to neighboring Hamblen County, Tennessee.

in a proceeding such as this in this Court (with certain exceptions not pertinent herein), " * * * the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous." 28 U.S.C. § 2254(d). As the state hearing was continued for a period of four and one-half months to accord the applicant an opportunity to produce at the hearing pertinent medical records, and none were presented, it must be assumed that the petitioner has no such additional evidence to offer upon a hearing before this Court herein.

■ It appearing that in the aforecited hearing, on the merits of the factual issue which Mr. Dunbar presents here, in a proceeding to which he and the respondent herein were parties, the applicant Mr. Dunbar was found to have had the mental capacity to plead guilty to the indictment under which he was convicted and is incarcerated, such determination is presumed to be correct. 28 U.S.C. § 2254(d). Although this Court would have experienced more difficulty with such determination than appears to have been the case with the state hearing judge,[2] this Court cannot say that such determination is not fairly supported by the record. *Idem.*

For such reason, the petitioner Mr. Guy Dunbar hereby is DENIED all relief. Rule 58(1), Federal Rules of Civil Procedure. Should the applicant give timely notice of an appeal from the judgment to be entered herein, he is authorized to proceed on such appeal in forma pauperis. Rule 24(a), Federal Rules of Appellate Procedure. Any such notice will be treated also as an application for a certificate of probable cause, Rule 22(b), Federal Rules of Appellate Procedure, which, in the light of all the circumstances, will ISSUE.

2. Although finding that Mr. Dunbar was competent mentally when he changed his plea to guilty, the state hearing judge apparently felt constrained to add these comments: " * * * There is something wrong with the [applicant]. The penitentiary won't help that condition. He should not be allowed to be at large. If there were anything I could do, and he would be acquitted on the grounds [sic] of present insanity, I would certainly not consider it, be-

cause it is not safe for a man that would do what Mr. Dunbar did—it's just not safe for him to be out. I wish I could commit him certainly for some period of time to Central State [a mental institution]. * * * If the issues were not down to just what they are, I would try to give him some relief. Of course, he might wind-up a lot worse than he is now. I'm not Solomon; I wish I knew what to do in these cases * * *"